IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SWMP, LLC and )
SUNWAY HOTEL GROUP, INC., )
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　　　　)
　v. ) Case No. 12-2608-JWL
　　　　　　　　　　　　　　　　　　　　　)
DOWNS RACING, L.P., )
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant. )
　　　　　　　　　　　　　　　　　　　　　)
_____)

## **MEMORANDUM AND ORDER**

This matter is presently before the Court on defendant's motion to dismiss for lack of personal jurisdiction (Doc. # 5). For the reasons set forth below, the Court **denies** the motion.

### I.　**Background**

This case was removed from state court on the basis of diversity jurisdiction. Plaintiffs are affiliated entities formed and based in Kansas. Defendant owns and operates a gaming facility in Pennsylvania. As alleged by plaintiffs, the parties began discussions concerning plaintiffs' involvement in the development of a new hotel and convention center at the gaming facility, and defendant entered into a Memorandum of Understanding ("MOU") with each plaintiff. Eventually, defendant terminated each

MOU and proceeded with the project without plaintiffs. Plaintiffs have brought claims against defendant for breach of a covenant of good faith and fair dealing, unjust enrichment, and breach of fiduciary duty.

## II.     Governing Standards

Although a plaintiff bears the burden of establishing personal jurisdiction over a defendant, *see OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1091 (10th Cir. 1998), in the preliminary stages of litigation this burden is "light." *See Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995)). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction "is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *See id.* The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Id*. Moreover, if the parties present conflicting affidavits, "all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.*

In *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159 (10th Cir. 2011), the Tenth Circuit reaffirmed the following standards governing this Court's analysis of the issue of personal jurisdiction over a defendant:

> Where a federal lawsuit is based on diversity of citizenship, the

court's jurisdiction over a nonresident defendant is determined by the law of the forum state. The party seeking to establish personal jurisdiction over a foreign defendant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment. Kansas's long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process principles. Consequently, this court need not conduct a statutory analysis apart from the due process analysis.

The due process analysis is also two-fold: First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he purposefully availed himself of the protections or benefits of the state's laws and should reasonably anticipate being haled into court there. Although agreements alone are likely to be insufficient to establish minimum contacts, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. The court must examine the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.

If [the defendant] is found to have the requisite minimum contacts with Kansas, then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him does not offend traditional notions of fair play and substantial justice. [The defendant] bears the burden at this stage to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. We consider the following five factors . . . in deciding whether the exercise of jurisdiction would be fair:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.

3

*Id.* at 1166-67 (citations and internal quotations omitted).

> Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state. . . .  The purpose of this requirement is to ensure that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous or attenuated contacts, or of the unilateral activity of another party or a third person.

*See Employers Mutual Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (citations and internal quotations omitted).

In this case, plaintiffs do not assert that defendant's contacts with Kansas have been sufficiently continuous and systematic to support general jurisdiction over it.  *See Intercon*, 205 F.3d at 1247.  Rather, plaintiffs argue that the Court should exercise specific jurisdiction in this case because defendant has "purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."  *See id.*

### III.  <u>Analysis</u>

In support of its motion to dismiss, defendant has submitted affidavits stating that its sole business is the operation of the facility in Pennsylvania; that it is not registered to do business in Kansas; that it does no business in and derives no earnings from Kansas; that it owns no property in Kansas; that it does not direct advertising into Kansas; that the MOUs were negotiated in person in Connecticut and by telephone calls and e-mails exchanged between plaintiffs and Connecticut; that the MOUs were signed in Connecticut; and that defendant terminated the MOUs when plaintiffs were unable to

4

secure financing for the project in a timely fashion.

Plaintiffs have submitted their own affidavit (which must be taken as true for purposes of this motion), which states the following facts: Plaintiffs are Kansas entities with their principal places of business in Kansas. One plaintiff was formed by the other plaintiff specifically for this project with defendant. Defendant began discussions with plaintiffs concerning the development project in 2009, and the parties subsequently executed the two MOUs. Representatives of the parties met in person several times regarding the project, including once in Kansas; the Kansas meeting also included the proposed architect, the proposed contractor, and the proposed lender. Defendant's representatives communicated with plaintiffs in Kansas concerning the project "on a regular and systematic basis—about every other day for two years." Even after termination of the MOUs, defendant encouraged and directed plaintiffs to continue to secure financing for the project; told plaintiffs that it was depending on them for the financing and planned to move forward with plaintiffs' involvement; told plaintiffs that it would negotiate and award contracts to one plaintiff for the construction of the development and for post-construction services; and told plaintiffs that they would not lose any money for their investment and effort on the project. Plaintiffs did continue their work on the project with the expectation that one plaintiff would proceed as the developer, with that plaintiff receiving monthly payments in Kansas. The other plaintiff was planning to administer the project from Kansas, with various services performed here.

Based on the affidavit submitted by plaintiffs, the Court concludes that plaintiffs have made a prima facie showing that their claims arise from sufficient "minimum contacts" by defendant with the State of Kansas under the standards set forth above. Defendant did not merely enter into agreements with Kansas companies. Rather, defendant entered into regular negotiations and planning with plaintiffs occurring over a period of years. During the course of that activity, defendant had regular contact with plaintiffs in Kansas concerning the project ("every other day"), and defendant's representatives even visited Kansas to discuss the development. Moreover, the development was to be administered by plaintiffs from Kansas. Defendant's contacts with Kansas were not merely random or fortuitous; rather, it reached out beyond the borders of Pennsylvania and entered into a continuing relationship with citizens of Kansas. In doing so, defendant purposefully availed itself of the benefits of Kansas's laws and should reasonably have anticipated being haled into court here.

In its motion, defendant has addressed the "minimum contacts" standard only by arguing that it has had no contacts with Kansas, and has instead focused on plaintiffs' satisfaction of any of the particular prongs of the Kansas long-arm statute, K.S.A. § 60-308(b). Defendant has not addressed or even acknowledged, however, that the long-arm statute must be construed and applied to the full extent permitted by due process. The Court has thus concluded that the requirements of Kansas long-arm statute have been satisfied in this case.

Moreover, defendant's particular arguments and citations to authority are not

6

well-taken. For instance, defendant argues that in order to "transact . . . business" in this State, *see* K.S.A. § 60-308(b)(1), one must not merely contract with a Kansas citizen, but must "effectuate[] or attempt[] to effectuate a purpose to improve his economic conditions." *See Green Country Crude, Inc. v. Avant Petroleum, Inc.*, 648 F. Supp. 1443, 1446 (D. Kan. 1986). The facts from plaintiffs' affidavit, however, clearly show that defendant established contacts with the Kansas plaintiffs to serve its own economic interests. Defendant also cites *Finance & Marketing Ass'n Int'l, Inc. v. He-Ro Group, Inc.*, 975 F. Supp. 1429 (D. Kan. 1997), for the propositions that the mere negotiation of a sales transaction or the placement of an order for goods over the telephone with persons in Kansas is not sufficient; that as a general rule letters and telephone calls are insufficient to establish personal jurisdiction; and that a party cannot manufacture jurisdiction over a defendant by the party's unilateral actions in Kansas. *See id.* at 1431, 1432. Again, those general statements are not apt here. Defendant did not simply negotiate a purchase over the phone from a Kansas resident, but rather visited Kansas and entered into a business relationship with Kansas citizens over a period of several years. Moreover, defendant's contacts with Kansas did not result solely from plaintiffs' unilateral actions.

With respect to plaintiff's claim for breach of fiduciary duty, defendant cites the statement in *Sheldon v. Khanal*, 605 F. Supp. 2d 1179 (D. Kan. 2008), that "[w]hen specific jurisdiction is premised on the commission of a tortious act, 'the forum state itself must be the focal point of the tort.'" *See id.* at 1186 (quoting *Dudnikov v. Chalk &*

7

*Vermilion Fine Arts, Inc.*, 514 F. 3d 1063, 1074 n.9 (10th Cir. 2008)). As plaintiffs point out, however, because they suffered any financial injury in Kansas, that tort occurred here under Kansas law. *See Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 690 (D. Kan. 2007) (Lungstrum, J.).

Because plaintiffs have made the required prima facie showing of defendant's minimum contacts with Kansas, defendant may defeat jurisdiction over it only by satisfying its burden to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable, such that the exercise of jurisdiction over him would offend traditional notions of fair play and substantial justice. In its briefs, defendant has not addressed this step of the due process analysis; thus, defendant has wholly failed to meet its burden to show that the exercise of jurisdiction over it would be unreasonable. The Court concludes on the record before it that the exercise of personal jurisdiction in this case would not offend traditional notions of fair play and substantial justice. Accordingly, the Court denies defendant's motion to dismiss for lack of personal jurisdiction.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion to dismiss for lack of personal jurisdiction (Doc. # 5) is **denied**.

IT IS SO ORDERED.

Dated this 30th day of October, 2012, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
